**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**(COLUMBIA DIVISION)**

**RHIANNON KENDALL, individually**
**and on behalf of all others similarly**
**situated,**

     **Plaintiff,**

**v.**                                                    **CASE NO.:**  3:20-2493-JFA

**AMAZON CORPORATE, LLC,**

     **Defendant.**
_____/

### CLASS ACTION COMPLAINT

1. Plaintiff Rhiannon Kendall ("Plaintiff"), files this Class Action Complaint against Defendant Amazon Corporate, LLC ("Defendant" or "Amazon") alleging that Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide Plaintiff and the putative class with a COBRA notice that complies with the law.

2. Despite having access to the Department of Labor's Model COBRA form, Amazon chose not to use the model form— presumably to save Amazon money because COBRA coverage is inherently expensive for employers.

3. In fact, according to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend

that this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." *Health Insurance Continuation Coverage Under COBRA*, Congressional Research Service, Janet Kinzer, July 11, 2013.

4.    The deficient COBRA notice at issue in this lawsuit both confused and misled Plaintiff. It also caused Plaintiff economic injuries in the form of lost health insurance and unpaid medical bills, as well as informational injuries.

5.    Amazon, the plan sponsor and plan administrator of the Amazon Health & Welfare Benefits Plan (the "Plan"), has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

6.    Defendant's COBRA notice violates 29 C.F.R. § 2590.606–4(b)(4). It is not written in a manner calculated to be understood by the average plan participant because it attempts to scare individuals away from electing COBRA by including an ominous warning suggesting that the submission of even "incomplete" information when electing COBRA may result in civil, or even criminal, penalties.

7.    The election form also needlessly references a possible "$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual." This information is thrown into Defendant's notice without context, much less providing any explanation of why potential criminal penalties, or IRS penalties, are somehow relevant to the COBRA election process.

8.    Threats of criminal penalties and IRS fines simply have no place in a

COBRA election notice, a process which is supposed to facilitate COBRA coverage election rather than intimidate people into not electing coverage. Adding such information distorts the information provided in the notice while also discouraging people, including Plaintiff, from electing COBRA.

9.      Additionally, Defendant's COBRA enrollment notice violates 29 C.F.R. § 2590.606– 4(b)(4)(v) because it includes conflicting information on when the COBRA continuation coverage form is actually due. Not only that, Defendant's COBRA form violates 29 C.F.R. § 2590.606–4(b)(4)(vi) because it fails to sufficiently identify the Plan Administrator.

10.      Because Defendant's COBRA enrollment notice omits the above critical pieces of information, it collectively violates 29 C.F.R. § 2590.606–4(b)(4), which requires the plan administrator of a group-health plan to provide a COBRA notice "written in a manner calculated to be understood by the average plan participant."

11.      As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION, VENUE, AND PARTIES

12.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

13.      Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), because the events giving rise to these claims arose in this district.

14.      Plaintiff is a South Carolina resident, resides in this district and was a

participant in the Plan prior to her termination, a qualifying event within the meaning of 29 U.S.C. § 1163(2).

15.    Defendant is a Delaware corporation with its principal place of business in Seattle, Washington, but is registered to do business in the State of South Carolina. Defendant employed more than 20 employees who were members of the Plan in each year during the relevant time period.  Defendant  is the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

## FACTUAL ALLEGATIONS

### *COBRA Notice Requirements*

16.    The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

17.    Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

18.    Notice is of enormous importance. The COBRA notification requirement exists because employees are not expected to know instinctively of their federally protected right to continue healthcare coverage subsequent to a qualifying event.

22

19.    COBRA further requires the administrator of such a group health plan to provide notice "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

20.    The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 as follows:

(4)  The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:

(i)  The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;

(ii)  Identification of the qualifying event;

(iii)  Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv)  A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v)  An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi)  An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation

that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii)   A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii)  An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x)   In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

21. To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

22. In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

22

23.    Here, Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

24.    Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that it served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. Instead, Defendant authored and disseminated a notice which omitted critical information required by law and needlessly included language meant to deter and otherwise "chill" election of COBRA benefits.

25.    Defendant's Notice violates several key COBRA requirements, specifically:

> a.    The notice violates 29 C.F.R. § 2590.606–4(b)(4)(v) because it includes conflicting information on the time period during which the election must be made, and the date by which the election must be made;

> b.    The notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits; and,

> c.    The notice violates 29 C.F.R. § 2590.606-4(b)(4) because, by including threats of criminal penalties and IRS fines which simply have no place in a COBRA election notice, and by omitting the other required information set out above, Defendant failed to provide a notice "written in a manner calculated to be understood by the average plan participant."

26.    Defendant's COBRA notice confused Plaintiff and resulted in Plaintiff's inability to make an informed decision as to electing COBRA continuation coverage.

27.    As a result, Plaintiff lost her health coverage.

28.    Defendant's deficient COBRA Notice caused Plaintiff an informational injury when Defendant failed to provide Plaintiff with information to which Plaintiff was entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R.§ 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

29.    Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the class members Plaintiff represents by failing to provide the information required by COBRA.

30.    Besides the informational injury suffered, Plaintiff also suffered a tangible injury in the form of economic loss, specifically the loss of health insurance coverage. Insurance coverage is an employer subsidized benefit of employment of monetary value, the loss of which is a tangible injury.

31.    Furthermore, Plaintiff suffered a second tangible economic loss when as she paid out of pocket for medical expenses incurred after she lost her Amazon health insurance.

### *Plaintiff Rhiannon Kendall*

32.    Plaintiff is a former employee of Defendant and was a participant in Defendant's health plan.

33.    Plaintiff's employment was terminated on January 31, 2019. Importantly, Plaintiff was not terminated for gross misconduct.

22

34.     Following this qualifying event, Defendant mailed Plaintiff the deficient COBRA enrollment notice.

35.     The deficient COBRA notice that Plaintiff received was violative of COBRA's mandates for the reasons set forth below.

36.     Defendant has in place no administrative remedies Plaintiff was required to exhaust prior to bringing suit.

37.     Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

### Violation of 29 C.F.R. § 2590.606-4(b)(4)
### Defendant failed to provide notice written in a manner
### calculated "to be understood by the average plan participant"

38.     Whether a defendant's COBRA notification complies with the law turns on whether the notice is understandable by an average plan participant. This requirement has been interpreted as an objective standard rather than requiring an inquiry into the subjective perception of the individual plan participants.

39.     29 U.S.C. § 1166(a)(4)(A) requires plan administrators to notify the former employee of their right to receive continuation coverage with a notice that must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

40.     As previously stated, Defendant's notice omits any reference to the plan administrator's name, address, and telephone number, as required by 29 C.F.R. § 2590.606- 4(b)(4)(i). It also includes contradictory dates as to the deadline for election. 29 C.F.R. § 2590.606-4(b)(4)(v).

41.     Not only that, Defendant's COBRA notice includes language warning of

and threatening certain criminal and IRS penalties for noncompliance with its notice procedures.

42.    Specifically, the notice includes the following language: "any person who knowingly provides materially false, incomplete, or misleading information is considered to have committed an act to defraud or deceive the Plan Sponsor(s). The filing of any application for insurance or other claim for benefits based on false, misleading, or incomplete information is a fraudulent act and may result in criminal or civil penalties."[1]

43.    The election form also needlessly references a possible "$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual."

44.    Defendant first buries its "COBRA Election Form" in the middle of its voluminous 19-page "COBRA Election Notice Summary."

45.    And, adding to the confusion, Defendant placed its misleading "certification" immediately after the election form without any reference to it in the Defendant's instructions on how to enroll using the paper election form in its "COBRA Election Notice Summary."

46.    In fact, nowhere in Defendant's "COBRA Election Notice Summary" are there instructions on what to do with the arbitrary "certification" form, including whether it is somehow required to enroll in COBRA.

47.    Defendant further includes needless language of monetary penalties for

_____

[1] It is unclear which criminal or civil statute Defendant is referencing. Notably, the ominous language Defendant included in its "certification" does not appear to be valid under South Carolina law. Other state statutes require an element of "intent" and are only actionable if incomplete, false, or misleading information is presented "with the intent to injure, defraud, or deceive any insurer."

22

failure to provide tax identification numbers for those electing COBRA benefits.

48.     The DOL Model Notice and its COBRA Continuation Coverage election Form does not contain such a "certification" regarding possible IRS penalties. Yet the Model DOL still manages to convey the required information, and does so in only seven pages compared to Defendant's nineteen pages of conflicting, inadequate, and misleading information.

49.     Without the above required information, coupled with its inclusion of needless criminal and IRS penalties, Defendant's notice is not sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

### Violation of 29 C.F.R. § 2590.606-4(b)(4)(v)
### Conflicting dates provided for when election due

50.     Under COBRA, the plan administrator must allow the discharged employee and other qualified beneficiaries sixty (60) days from the date on which coverage ends under the plan, or 60 days from the date notice was given to decide whether or not to elect continuation of their group health plan coverage. § 1165(1).

51.     In addition, payment of the first premium is not due until 45 days after the date when election of continuation of coverage is made. § 1162(3).

52.     In the present case, Defendant's notice provides information concerning how long the continuation of coverage will last and the amount of the premium. However, as to the enrollment deadline, Amazon's COBRA form on page 5 contains one deadline.

53.     But directly next to that information is a box clearly stating as follows: "If you do not complete the enrollment process within 60 days, you will lose your right to elect COBRA coverage." These two dates cannot be reconciled.

54.     Plaintiff cannot truly make an informed decision regarding continuation

coverage without knowing the specific, and correct, date when the election form is due. Not only that, the enrollment deadline also impacts the date for payment.

55.     Confusing or misleading notices, like that used by Amazon, about the duration of the election period and the 45 day grace period for payment of an initial premium for continuation coverage demonstrate Amazon has violated 29 C.F.R. § 2590.606-4(b)(4)(v).

### Violation of 29 C.F.R. § 2590.606-4(b)(4)(i)
### Failure to Identify Plan Administrator

56.     The COBRA notice provided to Plaintiff omitted important information identifying the party responsible under the Plan for administration of continuing coverage benefits. Instead, the third-party administrator, BenefitConnect, is identified, but that is not what the statute requires. Thus, Plaintiff was never informed *who* administers the continuation coverage, which is the Amazon entity named here.

57.     Defendant was required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i). Defendant's Notice failed to comply with this fundamental requirement.

58.     Defendant's notice only identifies a third-party administrator. A third-party administrator is different from the Plan Administrator. Identifying the Plan Administrator is critical because the plan administrator bears the burden of proving that adequate COBRA notification was given to the employee, particularly in cases, like this, involving large corporations with multiple entities located throughout the country.

### CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to the Federal

Rules of Civil Procedure on behalf of the following persons:

> **All participants and beneficiaries in Defendant's Plan who were sent a COBRA notice by Defendant, in the same form sent to Plaintiff, during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage**.

41.     No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class. As such, any efforts related to exhausting such non-existent remedies would be futile.

42.     Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

43.     Typicality: Plaintiff's claims are typical of the Class. The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiff received were typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

44.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class members, he has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

45.     Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

  a.  Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

22

b.  Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c.  Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

d.  The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

e.  Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

46.    Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

47.    Plaintiff intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure. The names and addresses of the Class Members are available from Defendant's records.

**CLASS CLAIM I FOR RELIEF**
*Violation of 29 U.S.C. § 1166(a), ERISA § 502(c), and 29 C.F.R. § 2590.606-4*

48.    The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

49.     Defendant is the plan sponsor and plan administrator of the Plan and was subject to the continuation of coverage and notice requirements of COBRA.

50.     Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

51.     On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice.

52.     The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a), ERISA § 502(c), and 29 C.F.R. § 2590.606-4 for the reasons set forth above.

53.     These violations were material and willful.

54.     Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a), ERISA § 502(c), and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff, individually and on behalf of the Class, pray for relief as follows:

a.     Designating Plaintiff's counsel as counsel for the Class;

b.     Issuing proper notice to the Class at Defendant's expense;

c.     Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a), ERISA § 502(c), and 29 C.F.R. § 2590.606-4;

22

d.      Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e.      Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f.      Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g.      Granting such other and further relief, in law or equity, as this Court deems appropriate.

h.      Designating Plaintiff's counsel as counsel for the Class;

i.      Issuing proper notice to the Class at Defendant's expense;

j.      Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

k.      Awarding appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

l.      Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

m.      Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

n.      Granting such other and further relief, in law or equity, as this Court

22

deems appropriate.

Dated this 30th day of June, 2020.

Respectfully submitted,

*/s/ Harper T. Segui* _____
Harper T. Segui
**WHITFIELD BRYSON LLP**
Federal Bar No: 10841
217 Lucas Street, Suite G
Mount Pleasant, South Carolina
T: 919-600-5000
harper@whitfieldbryson.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
IL Bar No. 6303726
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Tel:  (202) 429-2290
gklinger@masonllp.com

Rachel Dapeer*
**DAPEER LAW, P.A.**
Florida Bar No. 108039
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223
rachel@dapeer.com

Scott Edelsberg*
**EDELSBERG LAW, PA**
Florida Bar No. 0100537
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone:  305-975-3320
scott@edelsberglaw.com

Andrew J. Shamis*
**SHAMIS & GENTILE, P.A.**
Florida Bar No. 101754
14 NE First Avenue, Suite 1205
Miami, Florida 33132
Telephone:  305-479-2299
Fax: 786-623-0915
ashamis@shamisgentile.com

22

*Counsel for Plaintiff*
*and the Proposed Class*

\* Applications for admission *pro hac vice* to be filed